IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVNIA

| | | |
|---|---|---|
| RICHARD ALLEN HAMMONDS, | : | Civil No.: 12-CV-00236 |
| | : | |
| Plaintiff, | : | |
| v. | : | (Judge Brann) |
| | : | |
| SUPERINTENDENT B. COLLINS, et al., | : | |
| | : | |
| Defendants. | : | (Magistrate Judge Schwab) |

**MEMORANDUM OPINION**

April 20, 2016

The undersigned has given full and independent consideration to the January 4, 2016 Report and Recommendation of Magistrate Judge Susan E. Schwab (ECF No. 301) regarding the corrections defendants' renewed motion for summary judgment, the corrections defendants' motion for leave to file another summary judgment motion, and Plaintiff's motion for a separate trial as to the remaining claim against defendant Kyle Mummey.

This Court agrees with much of Magistrate Judge Schwab's analysis, and will adopt the report and recommendation in part. The Court adopts Magistrate Judge Schwab's conclusions regarding Plaintiff's Eighth Amendment medical and mental health claims, Eighth Amendment food claims, Equal Protection claims, and Americans with Disabilities Act claims. The Court also adopts Magistrate

1

Judge Schawb's conclusions regarding Plaintiff's First Amendment retaliation claims with respect to Vicki Stanishefski's failure to investigate and the doctoring of Plaintiff's medical records.

The Court rejects and modifies Magistrate Judge Schwab's conclusions with regard to Plaintiff's Eighth Amendment claims regarding the response to his purported threat of suicide, conditions of confinement, and excessive force. The Court also rejects and modifies Magistrate Judge Schwab's conclusions regarding Plaintiff's First Amendment retaliation claims concerning Plaintiff's denial of transfer to a SAU, defendant Sergeant Hannon, the misconduct report, use of force, denial of food, response to Plaintiff's suicide threat, and deprivations of human necessities.

Because the Court finds that the corrections defendants are entitled to summary judgment on all claims, I need not consider defendant's motion for leave to file another summary judgment motion, nor Plaintiff's motion for separate trials.

## I. Background

This case presents virtually no undisputed facts other than that Plaintiff, Richard Allen Hammonds, was a prisoner at the State Correctional Institution at Frackville at the time the claims in this case arose. In this case, Plaintiff makes claims similar to those made by him in at least one other lawsuit. *See Hammonds v.*

*Walsh*), 3:11-CV-1666 (M.D.Pa.) (jury verdict in favor of the defendants on First Amendment retaliation and Eighth Amendment excessive force claims) (aff'd by Third Circuit on April 1, 2016). For all but one of the numerous claims raised by Plaintiff, the record contains absolutely no evidence corroborating Plaintiff's claims.

Plaintiff asks this Court to rely entirely on his own uncorroborated self-serving affidavits, which are contradicted by the record, and allow his claims to survive an otherwise proper motion for summary judgment. The Court declines to do this.

## II. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] "Facts that could alter the outcome are 'material facts,'[2] and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct.[3] "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[4] "A plaintiff, on the other

---

[1] Fed.R.Civ.P. 56(a)
[2] *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)
[3] *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)." *Clark v. Modern Grp. Ltd.,* 9 F.3d 321, 326 (3d Cir.1993) (Hutchinson, J.).
[4] *Id.*

hand, must point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[5] "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."[6]

"[T]he inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[7] Thus, "[i]f the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[8] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[9] "The judge's inquiry, therefore, unavoidably asks ... 'whether there is [evidence] upon which a jury can properly

---

[5] *Id.*
[6] *Celotex Corp.,* 477 U.S. at 323–24.
[7] *Liberty Lobby, Inc.,* 477 U.S. at 252.
[8] *Id.*
[9] *Id.*

proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.' "[10]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[11] "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." [12]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[13] For movants and non-movants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) "citing to particular parts of materials in the record" that go beyond "mere allegations"; (ii) "showing that the materials cited do not establish the absence or

---

[10] *Id.* (quoting *Schuylkill & Dauphin Imp. Co. v. Munson,* 81 U.S. 442, 447 (1871)).
[11] *Celotex Corp.,* 477 U.S. at 323 (internal quotations omitted).
[12] *Id.*
[13] *Liberty Lobby, Inc.,* 477 U.S. at 250

presence of a genuine dispute"; or (iii) "showing ... that an adverse party cannot produce admissible evidence to support the fact."[14]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.' "[15] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion."[16] On a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record."[17] "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[18] "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[19] "If the evidence is merely colorable ... or is not significantly probative, summary judgment may be granted."[20]

## III. Analysis

---

[14] Fed.R.Civ.P. 56(c)(1).

[15] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.,* 311 F.3d 226, 233 (3d Cir.2003) (Weis, J.).

[16] Fed.R.Civ.P. 56(e)(2).

[17] Fed.R.Civ.P. 56(c)(3).

[18] *Liberty Lobby, Inc.,* 477 U.S. at 249.

[19] *Id.*

[20] *Id.* at 249–50 (internal citations omitted).

The Supreme Court in *Haines v. Kerner* noted that pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers."[21] Thereafter, in *Reese v. Sparks*, the United States Court of Appeals for the Third Circuit treated a verified declaration "as an affidavit in opposition to summary judgment."[22] As a result, courts in this Circuit have found that "a verified complaint *may* be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge."[23]

This Court, however, has considered Plaintiff's allegations and found the claims raised to be based on "stray, conclusory comments" that are insufficient to survive summary judgment because they fail to "amount to cognizable claim[s]."[24] This Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question."[25]

(A) Eighth Amendment Claims.

(i) *Threat of Suicide.*

---

[21] *Haines v. Kerner,* 404 U.S. 519, 520 (1972)

[22] *Hodgin v. Agents of Montgomery Cty.,* 619 F. Supp. 1550, 1552 (E.D. Pa. 1985) see *Reese v. Sparks*, 760 F.2d 64, 67 & n. 3 (3d Cir.1985)

[23] *Boomer v. Lewis*, No. 3:06-CV-0850, 2009 WL 2900778, at *14 (M.D. Pa. Sept. 9, 2009), aff'd, 541 F. App'x 186 (3d Cir. 2013) (emphasis added)

[24] *Wedmore v. Jorgenson*, No. 1:14-CV-149, 2015 WL 5793615, at *8 (D.N.D. Oct. 2, 2015).

[25] *Brooks v. Am. Broad. Companies, Inc.,* 999 F.2d 167, 172 (6th Cir. 1993) *see Comfort Trane Air Conditioning Co. v. Trane Co.,* 592 F.2d 1373, 1383 (5th Cir.1979)

The disputed facts regarding Plaintiff's suicide threat are as follows. Plaintiff states that he asked defendants Alshefski and Kufro to contact the psychological department because he felt suicidal.[26] Plaintiff states that defendants did not contact the psychological department but instead told him to kill himself or they would kill him, and that other prisoners talked him out of hanging himself.[27] *See Doc. 32* (Hammond's verified amended complaint) at ¶ 53; *Doc 297* at 13 (declaration of Jose Santiago) (stating that he heard Alshefski tells Hammonds to kill himself or he would kill Hammonds himself, and Alshefski and Kufro told Hammonds to tie a sheet around his neck). Alshefski and Kufro assert that they did not suggest to Hammonds that he should commit suicide or that they would kill him; they did not deny Hammonds access to mental health care anytime he expressed suicidal thoughts; and that, as dictated by DOC policy, they have always contacted the appropriate mental health staff when an inmate expresses suicidal thoughts. *Doc. 284* at 375-376, ¶¶13-15 & 387-388, ¶¶12-14.

This Court finds that defendants Alshefski and Kufro are entitled to summary judgment on the Eighth Amendment claim regarding their response to Hammond's purported suicide threat. Taking Hammonds allegations as true, no genuine issue of

---

[26] *Id*. at 10
[27] *Id.*

material fact exists because Hammonds has failed to show that the alleged conduct resulted in injury. [28]

Further, an Eighth Amendment violation "requires the prisoner's medical needs to be serious."[29] The Third Circuit has "defined a medical need as serious if it has been diagnosed by a physician as requiring treatment."[30] Here, by contrast, Plaintiff's mental health records indicate that Plaintiff lacked suicidal ideation on the days and months prior to December 29, 2011, the date on which the claim arose. *See Doc. 283* ¶ 181, 182, 184 (Plaintiff had no suicidal ideations on December 8, 16, and 23). This, coupled with an absence of previous suicide attempts known to Defendants, supports a finding that Defendants did not draw an inference of risk of substantial harm upon hearing Plaintiff's purported statements.[31] Although Plaintiff claims that he has attempted suicide three times, *Doc. 32*¶91, this claim finds no support on the record. Further, Plaintiff does not allege that defendants Alshefski and Kufro were involved in or aware of these

---

[28] *See Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) (In order to prove deliberate indifference… as with any tort claim, [prisoner] must show that [] injury was caused by the defendant's wrongful conduct").

[29] *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003)

[30] *Id.*

[31] S*ee Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); *see also* Wedmore v. Jorgenson, No. 1:14-CV-149, 2015 WL 5793615, at *4 (D.N.D. Oct. 2, 2015) ("To be deliberately indifferent to a strong likelihood that the prisoner will commit suicide, the official must be subjectively aware that the combination of the prisoner's suicidal tendencies and the feasibility of suicide in the context of the prisoner's surroundings creates a strong likelihood that the prisoner will commit suicide")

attempts, and such knowledge is not otherwise indicated by the record. The Defendant officers note that they had "no awareness of any past suicide attempts."[32]

(ii) *Use of Force.*

The disputed facts regarding this claim are as follows. Plaintiff states that defendant Purcell approached his cell and threatened to beat him up during an upcoming trip to a medical appointment. *Doc. 32* (verified amended complaint). Plaintiff then stuck his arm outside the wicket in order to waive over the lieutenant, when defendant Moss told defendant Purcell to "close his fucking hand in there." *Id.* According to Plaintiff the incident resulted in permanent scarring and the disfunction of his left hand. *Id.*

Defendants state that they ordered Plaintiff to remove his clothing before the medical appointment, in accordance with policy. When defendant Purcell attempted to remove Plaintiff's clothing from the aperture, Hammonds lunged his hands outside the aperture in an aggressive manner, and the officers closed the wicket lid in an effort to prevent an assault. *Doc. 283* at ¶¶ 56- 64. Medical staff examined Plaintiff within thirty minutes and noted no injury to Hammond's hand. *Id.* at , ¶¶ 69-70.

---

[32]Defendant's Objections to the Report and Recommendation, 6 (*Doc* 304)

The videotape here does not clarify the factual dispute or prove exactly what took place, but it does refute the assertion that Defendants acted in a malicious and sadistic manner. The video is blurry and taken from a distance, such that Plaintiff's hand does not appear to be visible at all throughout the video. The video footage shows that an officer approaches Plaintiff's cell, receives clothing through the aperture, talks with Plaintiff, and leaves the clothing on the aperture. *See Doc. 284, Exhibit W* (video starting at approximately 9:34 a.m.).The officer walks away, along with another officer who had been approaching. Both officers return, and a third officer arrives. The officers talk with Plaintiff. They then open the aperture slightly and it appears as though they are pushing something towards Plaintiff's cell. The officers then walk away. The entire incident lasts for approximately four minutes.

This Court finds that defendants Purcell, Kramer, Anspach, and Moss are entitled to summary judgment as to the Eighth Amendment use-of-force claim. "When videotape refutes an inmate's assertion that defendants used excessive force… we should conclude viewing the evidence in the light most favorable to the inmate that, no reasonable finder of fact could view the video of the incident and determine that defendants acted maliciously and sadistically, and may enter summary judgment on an excessive force claim."[33] The video footage would lead a

---

[33] *Taylor v. Reinard*, 2013 WL 4647421 at *8 M.D. Pa. Aug 28, 2013 (internal quotations omitted)

reasonable trier of fact to find that the officer "used the amount of force necessary to control [Plaintiff's] movement" when Plaintiff stuck his arm out of the cell door wicket.[34] No aspect of the video supports an assertion that the officers acted maliciously or intentionally secured Plaintiff's hand under the wicket.

Even if Plaintiff's assertion that he stuck his hand out of the wicket in a nonthreatening manner is true, it seems likely to this Court that the officers may not have immediately interpreted Plaintiff's action of lunging his hand out of the aperture in this way. It is likely that the officers were reacting to quickly to a potentially threatening situation, and may have interpreted the situation to be a threat. "Even if we concede that an inmate has established at most that prison officials over-reacted to the disturbance that he caused… any such over-reaction would still fall short of supporting a finding that prison officials acted 'maliciously and sadistically to cause harm."[35]

Despite Plaintiff's allegations that the incident caused dysfunction of his hand, medical staff noted no injury to his hand only thirty minutes after the incident. *Doc 283* at ¶¶ 56-61. While not dispositive, the "absence of any significant injury

---

[34] *Tindell v. Beard,* 351 F. App'x 591, 596 (3d Cir. 2009)
[35] *Taylor v. Reinard*, No. 3:CV-12-0891, 2013 WL 4647421, at *7 (M.D. Pa. Aug. 28, 2013) (citing *Fuentes v. Wagner, 206 F.3d 335, 346 (3d Cir.2000))*

supports a conclusion that the force used with respect to the instant action was *de minimis*."[36]

(iii) *Conditions of Confinement.*

The disputed facts are as follows. Plaintiff states that he was in solitary confinement in the RHU for 23 to 24 hours a day, with no television, no radio, no physical or social contact with people, no job, no vocational training, no rehabilitative programming, no group meals, no exercise, and no religious services. *Doc. 32* at ¶82. Plaintiff also states that he was approved for indigent and legal materials on January 6, 2012, but never received such items. *Id.* at ¶59.

The corrections defendants state that Plaintiff received indigent materials on January 11, 2012. *Doc 283* at ¶100. They point to Plaintiff's adjustment records, which indicate that Hammonds received all basic necessities except when he voluntarily refused to follow policies. *Id.* at 102-104.

Defendants Manbeck, Evans, Collins and Damiter are entitled to summary judgment on the Eighth Amendment conditions of confinement claim. This Court is persuaded by the DOC Defendant's argument that the two-week deprivations asserted here are insufficiently serious to state a claim under the Eighth

---

[36] *Schaeffer v. Schamp,* No. CIV.A.06-1516, 2008 WL 2553474, at *4 (W.D. Pa. June 25, 2008)

Amendment. Other courts in this Circuit have considered claims similar to Plaintiff's and have found summary judgment to be appropriate.[37]

Plaintiff claims that the POC is covered in urine, feces, semen, vomit, and old food. *Doc.* 296 at ¶148. He also asserts that there is no running water, no working toilet, no soap, no toilet paper, no cleaning supplies, and no food utensils. *Id.* In response, defendants state that the POC is cleaned by a janitor when not in use. *Doc.* 283 at 28. Second, defendants state that inmates in the POC are not provided with toiletries because they present a danger to themselves but are able to access these items at any time. *Id.* The inmates, who are under constant watch, must notify the observing officer when such items are needed and return them after use. *Id.* Defendants have a legitimate policy reason for requiring POC inmates to request necessities and return them after use. Plaintiff's self-serving allegations denying that necessities are provided in this manner and asserting that the cell is not clean are insufficient to defeat an otherwise proper motion for summary judgment.

(B) Retaliation claims.

---

[37] *See Fortune v. Hamberger,* 379 Fed. Appx. 116 (3d. Cir. 2010); *Briggs v. Heidlebaugh*, 1997 U.S. Dist. LEXIS 7673 (E.D. Pa. May 21, 19997)'; *Schaeffer v. Schamp,* 2008 U.S. Dist. LEXIS 121011 (W.D. Pa. May 28, 2008) ("The Constitution does not mandate comfortable prisons.")

Summary judgment is appropriate where there exists "no *genuine* issue of *material* fact." [38] "A non-moving party may not rest upon mere allegations, general denials or vague statements."[39] "Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner."[40] For a prisoner to prove that a defendant retaliated against him for exercising his constitutional rights, the prisoner must demonstrate that: (1) his conduct was constitutionally protected, (2) he suffered "adverse action" at the hands of the defendant, and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision of the defendant.[41] Plaintiff's numerous retaliation claims are based on his assertion that defendants retaliated against him for filing lawsuits and grievances, an activity protected under the First Amendment.

*(1) Denial of Transfer to SAU.*

It is undisputed that Plaintiff attended a PRC meeting on September 29, 2011 which was also attend by defendants Collins, Kovalchik, Sweeney, and Santerelli and Unit Manager Scheruren. The disputed facts are as follows.

---

[38] *Scott v. Harris*, 550 U.S. 372, 380) (emphasis in original)

[39] *Shaeffer v. Schamp*, 2008 WL 2553473 at *4 (W.D. Pa. June 25, 2008) (quoting *Trap Rock Indus. v. Local 825, Int'l Union of Operating Eng'rs,* 982 F.2d 884, 890 (3d Cir. 1992)

[40] *Miskovitch v. Hostoffer,* 721 F. Supp. 389, 396 (W.D. Pa. 2010)

[41] *Carter v. McGrady,* 292 F.3d 152, 158 (3d Cir. 2002)

Plaintiff states that, at the PCR meeting, defendant Kavolchik reprimanded him for filing lawsuits and grievances, and threatened him with indefinite lockdown in the RHU until his behavior changed. *Doc.* 296 at ¶¶30 & 36-37 and *Doc. 32* at ¶¶26&28. Defendants state that the PCR advised Plaintiff that he needed a substantial period of positive adjustment in the RHU before it would consider placement in the SMU, and informed Hammonds that he needed to cooperate with RHU staff. *Doc* 283 at ¶32. Defendants point to the Program Review Committee Action, which corroborates their version of the events. *Doc 253* at 11 (Inmate "was advised recently by PRC that he would need to have a substantial period of positive adjustment in the RHU before he would be considered for an SMU. PRC again explained the need for him to cooperate with RHU staff, but the inmate became argumentative… [h]e then stated that he had no intention of following the RHU's rules and procedures. At that point, PRC concluded the interview."

Defendants are entitled to summary judgment on this claim. The record presents legitimate reasons for the officers failure to consider Plaintiff for placement at the SAU, namely, that Plaintiff was required to demonstrate a substantial period of positive adjustment in the RHU before being considered for placement in the SMU. In addition, Plaintiff can point to no evidence on the record besides his own uncorroborated self-serving affidavits to support his claim that there is any relationship between his protected activity and the outcome of the PCR hearing.

*(2) Defendant Hannon.*

Plaintiff states that defendant Hannon came to his cell door, called him a "homosexual dick sucking fucking bitch snitch" and threatened to assault him if he did not stop exercising his right to petition. *Doc. 32* at ¶35.

Defendant Hannon is entitled to summary judgment based on Plaintiff's allegations that Defendant called him derogatory names and threatened to assault him. Neither the United States Supreme Court nor the Third Circuit has defined precisely when a threat constitutes an adverse action, but that this Circuit has generally concluded that verbal threats do not constitute an adverse action.[42] "Mere words spoken to a prisoner by a correctional officer, even when those words are harsh, do not amount to a violation of the prisoner's civil rights."[43] Magistrate Judge Schwab reasoned, however, that Hannon's purported act of calling Plaintiff a "snitch" and exposing his misconduct history to other prisoners elevated his statements such that they constituted an adverse action.

However, in cases that found calling a prisoner a "snitch" may amount to an adverse action, prisoners were encouraged to "take action against the snitch."[44] Here, Plaintiff does not allege that Officer Hannon prompted other prisoners to

---

[42] Report and Recommendation 62
[43] *Boomer v. Lewis*, No. 3:06-CV-0850, 2009 WL 2900778, at *14 (M.D. Pa. Sept. 9, 2009), aff'd, 541 F. App'x 186 (3d Cir. 2013) (citing *Greer v. York County Prison,* 07–CV–2248, 2008 WL 3819866, at *2 (M.D.Pa. Aug.11, 2008))
[44] Report and Recommendation 63

take action against Plaintiff. As such, this Court finds that Officer Hannon's

statements were more similar to a threat and general name calling, and the

statements did not amount to an adverse action. Beyond this, Plaintiff's own self-

serving affidavit is the only evidence presented on the record suggesting that

defendant Hannon made the alleged statements; this Court is not inclined to bar an

otherwise proper motion for summary judgment based on this self-serving,

uncorroborated evidence.

*(3) December 23, 2011, Misconduct Report.*

The undisputed facts are as follows. Plaintiff was issued a misconduct report

on December 23, 2011, for refusing to obey an order, using abusive, obscene, or

inappropriate language, and threatening an employee with bodily harm. *See Doc*

*284* and 244. Plaintiff was later found guilty of the misconduct charges. However,

Plaintiff disputes the reason as to why he was issued the misconduct. According to

Plaintiff, the misconduct was not issued for the reasons stated above, but was

issued in a retaliatory fashion after he refused to sign off on certain grievances.

*Doc. 32* at ¶39.

This Court is persuaded by DOC Defendants' argument that this Court is not

required to disregard *Nifas v. Beard* and other Third Circuit cases which have

found that a retaliatory discipline claim fails when evidence shows the prisoner

was guilty of the misconduct. Further, while the Defendants' statements regarding the issuance of the misconduct are corroborated by evidence of the record, *see.* *Doc. 284* at 244 (misconduct report), Plaintiff's claims are entirely unsupported in the record except for his self-serving statements. Therefore, Plaintiff's claim fails and Defendant Purcell is entitled to summary judgment as to this claim.

*(4) Use of Force.*

Plaintiff asserts that Defendants "called him a snitch and a rat bastard" before closing the cell door on his hand. [45] Plaintiff's uncorroborated, self-serving assertions regarding what defendants said to him are insufficient to uphold his claim on an otherwise proper motion for summary judgment.

*(5) Denial of Food.*

It is undisputed that on December 23, 2011, defendant Kramer gave Plaintiff a bagged lunch because Plaintiff was placed on restriction after a misconduct report was issued to him that morning. *Doc 283* at ¶75 and *Doc. 296* at ¶75. It is also undisputed that the lunch bag was wet, although the extent to which it was wet is disputed. Plaintiff asserts that defendant Kramer told him "its rat poison," and after Plaintiff refused the meal, and the bag leaked onto the floor; Plaintiff further alleges that two prison chaplains later saw the residue on the floor. *Doc 296* at ¶78.

---

[45] Report and Recommendation 70

Defendant Kramer states that the bag was wet due to heat and the moisture of the contents, and that he did not tell Plaintiff the bag contained rat poison. *Doc.* 283 at ¶76, 78.

Plaintiff's claim fails because the only evidence on the record to support his assertion that the lunch was laced with rat poison are his own, uncorroborated, self-serving statements. Absent more, Plaintiff's self-serving assertions that the lunch bag looked wet, Kramer told him "its rat poison," and others saw the residue, when there is no testimony to this effect, are not sufficient to withstand an otherwise appropriate motion for summary judgment.

Plaintiff also states that defendants Alshefski and Kufro denied him breakfast and lunch on December 29, 2011, and defendants Keller and Sweeny failed to intervene to correct that denial. Plaintiff asserts that he was not provided breakfast and lunch because he refused Alshefski's request to sign off on a grievance he had filed. *Doc. 296* at ¶86, 87 & ¶92. Defendants respond, however, that Plaintiff was not provided with a breakfast tray because Hammonds refused to turn on his cell light and stand at the back of his cell as required by the rules of RHU. *Doc. 283* at ¶¶83-85 & 87.

Plaintiff's claims fails because his assertion that defendants asked him to sign off on a grievance is the only evidence for the proposition that defendant's

actions were retaliatory in nature. This Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question."[46] Plaintiff's testimony is self-serving and insufficient to avoid summary judgment when uncorroborated and contradicted by other evidence of record.

 *(6) Suicide Threat*.

Plaintiff has some support in the record for his assertion that defendants Alshefski and Kufro told him to kill himself or they would kill him, and that these defendants saw Plaintiff tie a sheet around his neck. *See Doc.* 297 at 13 (declaration of Jose Santiago). Plaintiff asserts that this response was retaliatory because that morning, Alshefski and Kufro refused to provide him breakfast because he refused to sign off on a grievance. However, as discussed previously, Plaintiff's self-serving statements are the only evidence in the record to support his claim that he was refused breakfast because he refused to sign off on grievances, as opposed to his voluntary refusal to obey prison policy, as defendants claim occurred. This Court will not allow Plaintiff's uncorroborated, self-serving statements to bar an otherwise appropriate motion for summary judgment. Defendants are entitled to summary judgment on this claim.

*(7) Deprivation of Human Necessitie*s.

---

[46] *Brooks v. Am. Broad. Companies, Inc*., 999 F.2d 167, 172 (6th Cir. 1993) *see Comfort Trane Air Conditioning Co. v. Trane Co.,* 592 F.2d 1373, 1383 (5th Cir.1979).

As set forth with the Eighth Amendment claim, Plaintiff's only evidence in the record of retaliatory conduct is his own self-serving statements, such as his assertion that Manbeck called him a jailhouse lawyer and his assertion that he was denied basic items. Defendants, on the other hand, point to Plaintiff's adjustment records, which indicate that Hammonds received all basic necessities, including three daily meals, medication, showers, exercise, and shaves, except for when he voluntarily refused to follow policies. *Doc. 297* at 102-104; *see also Doc. 284* Exhibit R, Hammonds Adjustment Records for Security Level 5.

Again, this Court is not required to rely on Plaintiff's "unsupported, self-serving testimony as evidence sufficient to create a jury question,"[47] and defendants are entitled to summary judgment on this claim.

An appropriate Order will be entered today's date.

BY THE COURT:

/s Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[47] *Brooks v. Am. Broad. Companies, Inc.,* 999 F.2d 167, 172 (6th Cir. 1993) *see Comfort Trane Air Conditioning Co. v. Trane Co.,* 592 F.2d 1373, 1383 (5th Cir.1979)